Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MARY SPETH, as trustee of the THERESA FRISCH TRUST;<br><br>    Plaintiff,<br><br>    vs.<br><br><br>THE CITY OF RENO, a political subdivision of the State of Nevada.<br>_____/ | Case No.:  3:23-cv-396<br><br>**VERIFIED COMPLAINT** |

COMES NOW, MARY SPETH, as trustee of the THERESA FRISCH TRUST, by and through the undersigned counsel, and file the following Complaint seeking redress for the violation of the Plaintiff's right to just compensation for the taking of private property for public use in violation of the Fifth Amendment of the United States Constitution against THE CITY OF RENO, a political subdivision of the State of Nevada, as well as for declaratory and injunctive relief.

///

///

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 2201(a). There is federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege violations of the federal Constitution. Supplemental jurisdiction arises over the pendant state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiffs seek a declaration of their rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2. This Court has personal jurisdiction over Defendants because (a) they are located in the District where this action was filed; and (b) the actions giving rise to these claims occurred in and/or were directed from this District.

3. The City of Reno may be directly sued in Federal Court under the provisions of 42 U.S.C. § 1983 for violating the Plaintiff's rights under the 5th Amendment. *Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2164 (2019).

4. Venue is proper pursuant to 28 U.S.C. Section 1391 in the District of Nevada because the acts giving rise to the Plaintiff's claims occurred in this District.

## PARTIES

5. Plaintiff THERESA FRISCH TRUST owns real property situated in the City of Reno located at 247 Court St., Assessors Parcel Number 011-112-11.

6. MARY SPETH is the trustee of the THERESA FRISCH TRUST.

7. Defendant THE CITY OF RENO is and at all times relevant to this Complaint was a political subdivision of the State of Nevada.

////

///

## ALLEGATIONS OF FACT

8. 247 Court St., also known as the "Frisch House," was built approximately in 1906 and is located on the northeast corner of Court St. and Arlington St. in downtown Reno, Nevada.

9. The Frisch House is currently used as office space and is occupied by eight businesses.

10. Theresa Frisch, the previous property owner, managed the property for decades until she passed away on May 25, 2023.

11. After Ms. Frisch's death, Mary Speth took over the property as trustee of Theresa Frisch Trust and manages the Frisch House with her husband, Matt Speth, via 247 Court St., LLC., a Nevada Limited Liability Company.

12. The Frisch house is located next to a site upon which Las Vegas-based developer CAI Investments ("CAI") plans to construct a Kimpton-branded hotel called the "Reno Kimpton."

13. The plans for the Reno Kimpton were announced in 2019.

14. The original design for the 20-story Reno Kimpton proposed 270 hotel rooms, 50 condos, and 60,000 square feet of office space.

15. The sewer lateral from the Frisch House connects to a City sewer main that runs east-west through the Frish House property and then continues through the neighboring property on which the Reno Kimpton will be constructed.

16. Because of the size and location of the Reno Kimpton, the City's current sewer main that serves the Frisch House and the Reno Kimpton will need to be either moved or abandoned.

17. In July of 2022, the city of Reno informed CAI that they needed to submit a suitable plan for sewer realignment following an engineering assessment. This was among multiple changes the City requested before they could grant the building permit for the Reno Kimpton to begin construction.

18. CAI informed the City that the sewer line needed to be rerouted to accommodate the requirements of a modern high-rise. In reply, the City directed CAI to install its own new sewer line and bear the cost, as required by the City's code.

19. According to Section 18.04.503 of the City's Annexation and Land Development Code ("ALDC"), any new development in the City must connect to the City's sanitary sewer system unless given City Council permission to use a different provider. Developers are responsible for any required sewer system upgrades or extensions.

20. During negotiations with the City over the issuance of the building permit, the City expressly stated to CAI that it must obtain approval from or acquire the neighboring properties to carry out a proposed sewer plan. One such neighboring property is the Frisch House.

21. On August 23, 2022, Matt Speth was approached by Ross Penney from Luxe Industries, a contractor for the Reno Kimpton, who mentioned they were digging a sewer line for the Kimpton Reno. In a later email on September 30, 2022, Speth informed Penney of the owners of the Frisch House's opposition to any sewer work at the Frisch House, urging them to find an alternative solution without disrupting the current sewer system. See Exhibit 1.

22. At some point in late 2022 or early 2023, the City took over the Reno Kimpton's sewer project on behalf of CAI.

23. The City has a duty to make sewer service available to customers within the City's sewer service territory. See NRS 704.020(2)(a) defining "public utility" to include "sewerage service."

24. On January 17, 2023, Khalil Wilson, the assistant director of public works for Reno, contacted Matt Speth via email to arrange a meeting regarding a City sewer project impacting the Frisch House. Wilson's email made no reference to the Reno Kimpton project. See Exhibit 2.

25. In response, Matt Speth conveyed the Frisch House's opposition to the sewer realignment and inquired if it had any ties to the Reno Kimpton project, which the City denied. *Id.*

26. The City is executing the sewer work that CAI initially intended and was required to complete according to the ALDC. Instead of linking this work to the needs of the Reno Kimpton, the City attributes it to a project from roughly six years prior, titled the "2017 Sewer Rehabilitation Project — Phase 2."

27. 2017 Sewer Rehabilitation Project — Phase 2 involved significant underground trenching and installing approximately 6,600 feet of sewer pipes to replace old infrastructure. The Reno City Council awarded this project to Q&D Construction on February 14, 2018, and construction began a month later.

28. A letter the city sent to property owners indicated that the 2017 Sewer Rehabilitation Project — Phase 2 project was expected to be finished by July 2018. See Exhibit 3.

29. The City is using contingency funds, intended for emergency sewer issues and repair, to pay for the 2017 Sewer Rehabilitation Project — Phase 2 work on behalf of the Reno Kimpton. See Exhibit 4.

30. A May 22, 2023 letter from the City addressed to the Frisch House informed them the sewer main serving the property would be abandoned by September 1, 2023, and stating that this work would require the Frisch House to connect to a different sewer main on Arlington Ave. with a new sewer lateral. See Exhibit 5.

31. A July 12, 2023, letter from the City states that without the installation of the new private sewer lateral connecting the Frisch House to a new sewer main, the Frisch House would lose its sewer service and couldn't be occupied, and that the work would take approximately 3 weeks to complete. See Exhibit 6.

32. The City of Reno is conditioning the Frisch House's occupancy on relinquishing its right to exclude the City from using the property.

33. If the sewer service at the Frisch House is cut off and the building may not be occupied, the Frisch House property will be deprived of any economically beneficial use.

34. The City is using the threat of cutting off sewer service at the Frisch House to attempt to force the Plaintiffs to allow a physical invasion of their property without just compensation and without complying with the laws surrounding the taking of private property for public use as required by NRS Chapter 37.

35. Section 18.08.707 of the ALDC addresses the abandonment or vacation of public rights-of-way, or easements are reviewed in the interest of the City.

Section 18.08.707(c)(2) requires special proceedings for the abandonment of sewer, storm drain, or other public utility easements. Section 18.08.707(c)(3) requires that the application for abandonment will have a public hearing before the City Council and that nearby property owners must be notified by mail at least 10 days before the hearing.  The Frisch House has received no such notice, and the City has never asserted that it has an easement on the Frisch House property.

36.     Section 12.16.3000 of the City's Municipal Code describes the terms for termination of sewer service and requires that if a property violates the sewer service rules, the public works director can terminate its sewer service. Before doing so, the director is required to notify the property owner in writing, providing reasons and a hearing date set by the City Council. The notice must be provided at least ten days before the hearing and is required to be mailed to the owner and either delivered to the tenant or posted visibly on the property.  The City has not provided any such notice.

37.     NRS 37.010(1)(h) lists "sewerage" as Is listed as one of the public uses for which the right of eminent domain may be exercised.

38.     Nevada's Open Meeting Law, at Nevada Revised Statutes ("NRS") 241.034, requires that a property owner receive notice if the government plans to exercise the power of eminent domain over the property of another.  The Frisch House has received no such notice.

39.     Section 8(3) of Article 1 of the Nevada Constitution states that "Private property shall not be taken for public use without just compensation having been

first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made."

40. The 5th Amendment's takings clause does not forbid taking private property but mandates just compensation if there's an interference with a property interest equating to a taking. See *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314-315 (1987).

41. A *Loretto* taking occurs when the government mandates a permanent physical intrusion on property. See *Loretto v. Teleprompter Manhattan Catv Corp.*, 458 U.S. 419, 430, 102 S. Ct. 3164, 3173 (1982) "[P]ermanent occupations of land by such installations as telegraph and telephone lines, rails, and underground pipes or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land." *Loretto v. Teleprompter Manhattan Catv Corp.*, 458 U.S. 419, 430, 102 S. Ct. 3164, 3173 (1982).

42. Government-authorized physical invasions are takings requiring just compensation. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2073 (2021). An access regulation requiring farmers to permit unions to hold meetings on farm property appropriates the farmers' property and therefore constitutes a *per se* physical taking. *Id.* at 2072.

43. The government cannot deny benefits to someone for exercising a constitutional right. The unconstitutional conditions doctrine safeguards the Constitution's rights by prohibiting the government from forcing people to forgo them. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 133 S. Ct.

2586, 2594 (2013). "By conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation." *Id.* at 605 citing *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309 (1994) and *Nollan v. Cal. Coastal Com*, 483 U.S. 825, 107 S. Ct. 3141 (1987).

## CLAIMS FOR RELIEF

**42 U.S.C. § 1983 - VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**

44. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as though fully set forth herein.

45. The Fifth Amendment to the United States Constitution provides in relevant part: "[N]or shall private property be taken for public use, without just compensation."

46. Defendant has taken or plans to take the Plaintiff's private Property for public use by conditioning occupancy of the property on consenting to the City's physical invasion and installation of a new sewer lateral.

47. Defendant has not instituted formal proceedings to take the Plaintiff's real or personal property.

48. Defendant has not paid just compensation to the Plaintiffs for the taking of Plaintiff's real or personal property.

49. By its conduct, as described herein, Defendant is liable to Plaintiff under 42 U.S.C. § 1983 for taking the Plaintiff's property for public use without first paying just compensation

50. The actions of the City described herein execute a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City's officers.

51. Defendant the City has directly acted to and developed, implemented, enforced, encouraged, and sanctioned express and implied de facto policies, practices, and/or customs of unlawfully using the Property without having first paid just compensation.

52. The Constitutional abuses and violations by Defendant the City were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by the City.

53. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to just compensation and money damages for the unconstitutional taking of their property as well as declaratory relief.

54. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

55. In addition to the relief requested above, the Plaintiffs requests relief as described in the prayer for relief below.

**INVERSE CONDEMNATION**

56. Plaintiffs incorporate all preceding paragraphs as though each were fully set forth verbatim hereat.

57. The Defendant's acts and/or omissions described above constitute a taking of the Plaintiff's property without just compensation first being paid in violation of the Nevada Constitution and the US Constitution.

58. The Plaintiffs have a real or personal interest in the property taken by the Defendants.

59. The taking of the Plaintiff's property is for public use.

60. The Plaintiffs have not been paid just compensation by the Defendants for the taking of Plaintiff's property.

61. The taking of the Plaintiff's property was proximately caused by the Defendants, who are government entities.

62. The Defendants have not instituted formal proceedings for the taking of the Plaintiff's property.

63. The Plaintiffs have suffered damages as a result of the taking of their property by the Defendants in an amount to be proven at trial; and

64. The Plaintiffs have been required to seek professional engineering and legal services to prosecute this action, and, accordingly, each is entitled to recover their reasonable attorney fees together with other costs incurred therefor.

## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

65. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as though fully set forth herein.

66. The Fifth Amendment to the United States Constitution provides in relevant part: "[N]or shall private property be taken for public use, without just compensation."

67. Defendant took Plaintiff's private Property for public use by conditioning occupancy of the property on consenting to the City's physical invasion and installation of a new sewer lateral.

68. Defendant has not instituted formal proceedings to take the Plaintiff's real or personal property.

69. Defendant has not paid just compensation to the Plaintiffs for the taking of Plaintiff's real or personal property.

70. There is a genuine and bona fide dispute and an actual controversy and disagreement between the City and the Plaintiff regarding whether the City has a taken the Plaintiff's property for public use without paying just compensation.

71. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201, the Plaintiffs in good faith, request that the Court declare the following:

    a. The City's actions constitute a taking of the Plaintiff's property for public use;

    b. That the Plaintiff have a right to just compensation for the taking of their property for public use;

    c. That the Plaintiffs have the right to exclude the public, including the City, from the use of their property unless just compensation is paid;

    d. That the City has violated the rights of the Plaintiff under the 5th Amendment by threatening to cut off sewer service to the Plaintiff's property unless the Plaintiff permits the physical invasion of their property, without having paid just compensation.

///

**INJUNCTIVE RELIEF**

72. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

73. Under 28 U.S. Code § 2201, a real and immediate controversy exists between Plaintiff and Defendants regarding Plaintiff's right to just compensation before their property is taken for public use;

74. Defendants' policies and actions have resulted and will result in irreparable injury to Plaintiff if the Plaintiff's sewer service is cut off;

75. There is no plain, adequate, or complete remedy at law to address the wrongs described herein;

76. Defendants have made clear that they will cut off sewer service to the Plaintiff if they do not permit the physical invasion and public use of their property;

77. Unless restrained by this Court, Defendants will continue to implement these unlawful policies and practices;

78. Defendants' acts alleged above violate established constitutional rights of Plaintiff, and Defendants could not reasonably have thought that the conduct of their agents and employees was lawful;

79. An actual controversy exists between Plaintiff and Defendants in that Defendants, their agents, and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so;

80. Plaintiff claims that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

///

WHEREFORE, the Plaintiff requests that this Court:

a. Enter a declaratory judgment that the actions of the City complained of herein are unlawful and violate the United States Constitution and the Nevada Constitution;

b. For a preliminary injunction, enjoining and restraining Defendant from cutting off Plaintiff's sewer service until just compensation is first paid for the taking of Plaintiff's property for public use;

c. Order Defendants to pay attorneys' fees and costs of the action pursuant to 42 U.S.C. 1988;

d. Grant any further relief that the Court deems just and proper.

RESPECTFULLY SUBMITTED this Aug 14, 2023

By: _____/s/ Luke Busby, Esq._____
Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorneys for the Plaintiff*

## VERIFICATION

Mary Speth, Trustee of the under penalty of perjury that the following is true and correct, and says:

That she is a Plaintiff in this matter, has read the foregoing Verified Complaint, knows the contents thereof as they relate to the facts asserted therein, and verifies that those facts are true and correct to the best of his/her knowledge, except as to the matters therein set forth upon information and belief, and as to those matters, he/she believes them to be true.

Dated: 8-11-23

By: *Mary Speth*

15

**EXHIBIT LIST**

1. September 30, 2022 Ross Penny Email

2. January 17, 2023, Khalil Wilson Email

3. 2017 Sewer Rehabilitation Project — Phase 2 Letter

4. Contingency funds documentation

5. May 22, 2023 Letter from the City

6. July 12, 2023 Letter from the City