Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARY SPETH, as trustee of the THERESA FRISCH TRUST;<br><br>    Plaintiff,<br><br>    vs.<br><br>THE CITY OF RENO, a political subdivision of the State of Nevada.<br>_____/ | Case No.: 3:23-cv-00396-MMD-CLB<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

COMES NOW, Plaintiff MARY SPETH, as trustee of the THERESA FRISCH TRUST, by and through the undersigned counsel, and hereby files the following Motion for Preliminary Injunction against Defendant THE CITY OF RENO, a political subdivision of the State of Nevada, seeking to enjoin the City from cutting off sewer service to the Plaintiff's property at 247 Court St. in Reno, Nevada.

This motion is made and based upon all the pleadings and records on file for this proceeding together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth

herein haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

The facts described below are also contained in the Plaintiff's Verified Complaint, filed contemporaneously with this Motion.

247 Court St., also known as the "Frisch House," was built approximately in 1906 and is located on the northeast corner of Court St. and Arlington St. in downtown Reno, Nevada.

The Frisch House is currently used as office space and is occupied by eight businesses.

Theresa Frisch, the previous property owner, managed the property for decades until she passed away on May 25, 2023.

After Ms. Frisch's death, Mary Speth took over the property as trustee of Theresa Frisch Trust and manages the Frisch House with her husband, Matt Speth, via 247 Court St., LLC., a Nevada Limited Liability Company.

The Frisch house is located next to a site upon which Las Vegas-based developer CAI Investments ("CAI") plans to construct a Kimpton-branded hotel called the "Reno Kimpton."

The plans for the Reno Kimpton were announced in 2019.

The original design for the 20-story Reno Kimpton proposed 270 hotel rooms, 50 condos, and 60,000 square feet of office space.

The sewer lateral from the Frisch House connects to a City sewer main that runs east-west through the Frish House property and then continues through the neighboring property on which the Reno Kimpton will be constructed.

Because of the size and location of the Reno Kimpton, the City's current sewer main that serves the Frisch House and the Reno Kimpton will need to be either moved or abandoned.

In July of 2022, the City of Reno informed CAI that they needed to submit a suitable plan for sewer realignment following an engineering assessment. This was among multiple changes the City requested before they could grant the building permit for the Reno Kimpton to begin construction.

CAI informed the City that the sewer line needed to be rerouted to accommodate the requirements of a modern high-rise. In reply, the City directed CAI to install its own new sewer line and bear the cost, as required by the City's code.

According to Section 18.04.503 of the City's Annexation and Land Development Code ("ALDC"), any new development in the City must connect to the City's sanitary sewer system unless given City Council permission to use a different provider. Developers are responsible for any required sewer system upgrades or extensions.

During negotiations with the City over the issuance of the building permit, the City expressly stated to CAI that it must obtain approval from or acquire the neighboring properties to carry out a proposed sewer plan. One such neighboring property is the Frisch House.

On August 23, 2022, Matt Speth was approached by Ross Penney from Luxe Industries, a contractor for the Reno Kimpton, who mentioned they were digging a sewer line for the Kimpton Reno. In a later email on September 30, 2022, Speth informed Penney of the owners of the Frisch House's opposition to any sewer work at the Frisch House, urging them to find an alternative solution without disrupting the current sewer system. See ECF 1-1.

At some point in late 2022 or early 2023, the City took over the Reno Kimpton's sewer project on behalf of CAI.

The City has a duty to make sewer service available to customers within the City's sewer service territory.  See NRS 704.020(2)(a) defining "public utility" to include "sewerage service."

On January 17, 2023, Khalil Wilson, the assistant director of public works for Reno, contacted Matt Speth via email to arrange a meeting regarding a City sewer project impacting the Frisch House. Wilson's email made no reference to the Reno Kimpton project.  See ECF 1-2.

In response, Matt Speth conveyed the Frisch House's opposition to the sewer realignment and inquired if it had any ties to the Reno Kimpton project, which the City denied. Id.

The City is executing the sewer work that CAI initially intended and was required to complete according to the ALDC. Instead of linking this work to the needs of the Reno Kimpton, the City attributes it to a project from roughly six years prior, titled the "2017 Sewer Rehabilitation Project — Phase 2."

2017 Sewer Rehabilitation Project — Phase 2 involved significant underground trenching and installing approximately 6,600 feet of sewer pipes to replace old infrastructure. The Reno City Council awarded this project to Q&D Construction on February 14, 2018, and construction began a month later.

A letter the City sent to property owners indicated that the 2017 Sewer Rehabilitation Project — Phase 2 project was expected to be finished by July 2018. See ECF 1-3.

The City is using contingency funds, intended for emergency sewer issues and repairs, to pay for the 2017 Sewer Rehabilitation Project — Phase 2 work on behalf of the Reno Kimpton. See ECF 1-4.

A May 22, 2023 letter from the City addressed to the Frisch House informed them the sewer main serving the property would be abandoned by September 1, 2023, and stating that this work would require the Frisch House to connect to a different sewer main on Arlington Ave. with a new sewer lateral.  See ECF 1-5.

A July 12, 2023, letter from the City states that without the installation of the new private sewer lateral connecting the Frisch House to a new sewer main, the Frisch House would lose its sewer service and couldn't be occupied, and that the work would take approximately 3 weeks to complete. See ECF 1-6.

Counsel for the Plaintiff and Defendant have subsequently exchanged emails and on August 15, 2023 counsel for the City informed the undersigned counsel that sewer service to the Frisch House will not be cut off on September 1, 2023.  As such, the Plaintiff is not seeking a temporary restraining order at this time, but rather a preliminary injunction.

The City of Reno is conditioning the Frisch House's occupancy on relinquishing its right to exclude the City from using the property.

If the sewer service at the Frisch House is cut off and the building may not be occupied, the Frisch House property will be deprived of any economically beneficial use.

The City is using the threat of cutting off sewer service at the Frisch House to attempt to force the Plaintiffs to allow a physical invasion of their property without just compensation and without complying with the laws surrounding the taking of private property for public use as required by NRS Chapter 37.

**Jurisdiction and Venue**

This Court has jurisdiction pursuant to 28 U.S.C. 1331 (federal question), 28 U.S.C. 1343 (civil-rights violations), 28 U.S.C. 2201 (declaratory relief), and 28 U.S.C. 2202 (injunctive relief).

**Standard of Review**

A preliminary injunction may be awarded upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. In other words, as described by the 9th Circuit, a preliminary injunction may be granted if there is a likelihood of irreparable injury to the plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the

injunction is in the public interest. *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).   This same standard applies to a request for a temporary restraining order. See *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001), overruled on other grounds in *Winter*.

**Analysis**

**a. Likelihood of Success on the Merits**

The Plaintiff has plead four causes of action in the Complaint: (1) 42 U.S.C. 1983 claim for violation of his 5th Amendment right to just compensation for the taking of private property; (2) An inverse condemnation claim under the Nevada Constitution; (3) for declaratory relief under the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201; and (4) for injunctive relief.

"[T]he existence of a right violated is a prerequisite to the granting of an injunction." *State Farm Mut. Auto. Ins. Co. v. Jafbros Inc*., 109 Nev. 926, 928, 860 P.2d 176, 178, 1993 WL 385119 (1993) quoting 43 C.J.S. § 18 Injunctions (1978). As described below, the City has violated the Plaintiff's rights under the 5th Amendment, the Nevada Constitution, and various other laws and regulations.

Section 18.08.707 of the ALDC addresses the abandonment or vacation of public rights-of-way, or easements are reviewed in the interest of the City.  Section 18.08.707(c)(2) requires special proceedings for the abandonment of sewer, storm drain, or other public utility easements. Section 18.08.707(c)(3) requires that the application for abandonment will have a public hearing before the City Council and that nearby property owners must be notified by mail at least 10 days before the

hearing.  The Frisch House has received no such notice, and the City has never asserted that it has an easement on the Frisch House property.

Section 12.16.3000 of the City's Municipal Code describes the terms for termination of sewer service and requires that if a property violates the sewer service rules, the public works director can terminate its sewer service. Before doing so, the director is required to notify the property owner in writing, providing reasons and a hearing date set by the City Council. The notice must be provided at least ten days before the hearing and is required to be mailed to the owner and either delivered to the tenant or posted visibly on the property.  The City has not provided any such notice.

NRS 37.010(1)(h) lists "sewerage" as Is listed as one of the public uses for which the right of eminent domain may be exercised.

Nevada's Open Meeting Law, at Nevada Revised Statutes ("NRS") 241.034, requires that a property owner receive notice if the government plans to exercise the power of eminent domain over the property of another.  The Frisch House has received no such notice.

Section 8(3) of Article 1 of the Nevada Constitution states that "Private property shall not be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made."

The 5th Amendment's takings clause does not forbid taking private property but mandates just compensation if there's an interference with a property interest

equating to a taking. See *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314-315 (1987).

A *Loretto* taking occurs when the government mandates a permanent physical intrusion on property. See *Loretto v. Teleprompter Manhattan Catv Corp*., 458 U.S. 419, 430, 102 S. Ct. 3164, 3173 (1982) "[P]ermanent occupations of land by such installations as telegraph and telephone lines, rails, and underground pipes or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land." *Id.* at 430.

Government-authorized physical invasions are takings requiring just compensation. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2073 (2021).  The access regulation appropriates a right to invade the growers' property and therefore constitutes a per se physical taking. *Id.* at 2072.

The government cannot deny benefits to someone for exercising a constitutional right.  The unconstitutional conditions doctrine safeguards the Constitution's rights by prohibiting the government from forcing people to forgo them. *Koontz v. St. Johns River Water Mgmt. Dist*., 570 U.S. 595, 604, 133 S. Ct. 2586, 2594 (2013).  "By conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation." *Id.* at 605 citing *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309 (1994) and *Nollan v. Cal. Coastal Com*, 483 U.S. 825, 107 S. Ct. 3141 (1987).

Here, the facts above describe that the City of Reno is placing unconstitutional conditions on the continued occupation of the Frisch House.   The City is coercing the Plaintiffs to consent to the occupation of the property and installation of utility infrastructure, which is only necessary to facilitate the development of a neighboring property, without any compensation under the threat of losing a necessary utility.  It is evident that the City of Reno is engaging in conduct that contravenes the spirit and letter of the unconstitutional conditions doctrine. By threatening the loss of a crucial utility to the Frisch House unless it consents to property occupation and infrastructure installation without compensation, the City effectively attempts to force the Plaintiffs to abandon its Fifth Amendment rights. Based on the established principles of constitutional law regarding takings, the unconstitutional conditions doctrine, and the specific actions of the City of Reno as described, Plaintiff will likely succeed on the merits.

### b. Irreparable Harm

For a temporary restraining order or preliminary injunction to issue, the moving party must show that the nonmoving party's conduct, should it continue, would cause irreparable harm for which there is no adequate remedy at law. *Dep't. of Conservation & Natural Res. v. Foley*, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005). Here, if the City carries through with its threat to cut off sewer service to the Frisch House, the property may not be occupied, and the eight tenants who currently rent business space at the office will be compelled to rent places to do business elsewhere.  Further, for the Frisch Property to continue to operate as an ongoing concern, it needs to have income,  which it will lose if the building cannot be

occupied because the City cut off sewer service.  While monetary damages might address some concerns, they can't always fully compensate for the loss of constitutional rights or the myriad of issues that arise from the lack of utilities. Monetary injury is not usually considered irreparable, but a threat of being driven out of business is. *N. Plains Res. Council v. United States Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1034 (D. Mont. 2020) citing hiQ Labs, Inc. v. LinkedIn Corp., 938 F.3d 985, 993 (9th Cir. 2019).

### c. Balance of the Equities

The equities tip sharply in favor of relief for the Plaintiff because of the facial strength of the claim.   The takings clause is a bulwark against governmental overreach and coercion related to private property. The City of Reno is circumventing this essential right by imposing conditions on the Frisch House that essentially mandate the surrendering of property rights without compensation. By threatening the Frisch House with the loss of a necessary utility if they do not consent to the occupation of the property and the installation of utility infrastructure, the City is leveraging its power to compel compliance. Such power dynamics should be closely scrutinized under equity's lens, as they typically do not favor the less powerful party—in this case, the Frisch House. Access to utilities is not a luxury; it's a basic necessity for any establishment in the modern era. Threatening the removal or discontinuation of such a service places the Frisch House in an untenable position where they are pressured to give in to the City's demands, regardless of their constitutionality.  The City is asking the Frisch House to make permanent changes to their property (by installing infrastructure to

accommodate a neighboring development) without any compensation. This trade-off is not proportional, as the City (and the neighboring development) receives the benefit of the infrastructure without bearing the cost or the burden. Conversely, the Frisch House bears the burden without an equitable benefit.  If the City of Reno is allowed to proceed without redress, it sets a troubling precedent for future dealings between municipalities and private entities or individuals. Such actions might embolden other cities or governmental bodies to similarly coerce citizens under the guise of offering essential services. The balance of equities does not merely consider the present situation but also the potential ramifications for future cases.

The balance of equities clearly favors the Frisch House. Their rights to just compensation, the coercive tactics employed by the City, and the broader implications of such actions necessitate judicial review of the City's approach. Equity, in this case, requires that the Frisch House be treated justly and that their constitutional rights be upheld.

**d. The Public Interest Is Served**

An injunction in this matter will not have any impact beyond the parties to this case,as such, this factor should carry little weight in the Court's analysis. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). However, the public has a strong interest in preventing the violation of a party's constitutional rights, and as such, this factor weighs in the Plaintiff's favor as well.  *Id.* at 996. At most, The issuance

of a preliminary injunction in this matter will simply delay the City's planned sewer replacement project.

### e. Bond

Pursuant to FRCP 65(c),"…the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Federal courts have discretion as to the amount of security and may even dispense with the security requirement altogether where the relative hardships of the parties and the likelihood of success on the merits and concludes that to require any security would be unjust. See *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  No bond should be required in this matter because the Plaintiffs is merely seeking that they're well-established constitutional right to just compensation before taking occurs being forced by the Court.

The Fifth Amendment of the U.S. Constitution ensures that private property cannot be taken for public use without just compensation. If the City of Reno is indeed bypassing this fundamental right, any delay in granting relief might lead to irrevocable harm to the Frisch House in the form of losing its sewer service. Requiring a bond could potentially delay or impede the issuance of an injunction, thereby allowing the continuation of this alleged infringement.  Requiring a bond may set a precedent that financial resources are a barrier to accessing justice, particularly when confronting a well-resourced entity like a municipal government.

This could deter others from seeking injunctions when their rights are violated, undermining the justice system's role in providing accessible remedies.  In this case, it's in the public interest to uphold and defend constitutional rights. By not requiring a bond, the Court would be sending a message about the paramount importance of constitutional protections and the urgency of addressing potential violations.

The imposition of a bond adds an additional financial burden on the Plaintiffs. In a situation where they're already facing potential property rights violations without compensation, it is inequitable to burden them further financially. Equity demands that relief be accessible, especially when constitutional rights are in the balance.

The City's threat to withdraw a necessary utility from the Frisch House significantly amplifies the urgency of the situation. Utilities are essential for the day-to-day functioning of any establishment. If the Frisch House is already being pressured into compliance under such a threat, requiring a bond could further skew the power dynamics in favor of the City, given its relative resources and influence.

**Conclusion**

Given the City's failure to follow its own rules, the Nevada Consitution, and the 5th Amendment, the Court should prevent the City from cutting off the Plaintiff's sewer service until Plaintiffs are paid just compensation for the use of their property for public purposes.

///

///

WHEREFORE, Plaintiff requests that the Court provide the following relief:

(1) Schedule a hearing to receive evidence if the Court deems necessary; and

(2) Issue a preliminary injunction against the City as described above.

RESPECTFULLY SUBMITTED this: Aug 16, 2023

By: _____/s/ Luke Busby, Esq._____

Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the date shown below, I caused service to be completed of a true

and correct copy of the foregoing Document by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

\_\_\_x\_\_\_ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

\_\_\_X\_\_\_ delivery via electronic means (fax, eflex, NEF, etc.) to:

> Karl Hall, Esq.
> Susan Rothe, Esq.
> Mark Hughes, Esq.
> Reno City Attorney
> Civil Division
> PO Box 1900
> Reno, NV 89505

**DATED** this  Aug 16, 2023

By: \_\_\_/s/  Luke Busby, Esq._____