Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARY SPETH, as trustee of the THERESA FRISCH TRUST;<br><br>          Plaintiff,<br><br>     vs.<br><br><br>THE CITY OF RENO, a political subdivision of the State of Nevada.<br><br>          Defendant.<br>_____/ | Case No.: 3:23-cv-00396-MMD-CLB<br><br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

COMES NOW, Plaintiff MARY SPETH, as trustee of the THERESA FRISCH TRUST, by and through the undersigned counsel, and hereby files the following Reply to the August 28, 2023 Response in Opposition to Motion for Preliminary Injunction filed by Defendant THE CITY OF RENO, a political subdivision of the State of Nevada.

This Reply is made and based upon all the pleadings and records on file for this proceeding together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth herein haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

The City's Response to the motion is an exercise in obfuscation and contradiction.  The City states in its introduction to its Response that nothing is being taken from the Plaintiff and that it will not lose its sewer service.  This is an entirely different position than the one expressed by the City Attorney in Exhibit 6 to the Complaint at ECF #1-6, in which, the City stated: "Without this new private lateral installed by the City's contractor 247 Court Street will not have sewer service and will not be able to occupy the property."

The City is abandoning the sewer main that currently serves 247 Court St. The decision to abandon the main, the City states in its Motion, "is unrelated to the Kimpton development with which Plaintiff appears to be preoccupied."  The City presents no evidence to support this assertion, which is striking in light of the evidence detailed in the Plaintiff's motion.  The evidence before the Court is quite clear that the entire reason the sewer main is being *abandoned and relocated* is because of the Reno Kimpton.  Further evidence to refute this claim can be located in the Reno Gazette Journal's Sunday edition from July 30, 2023, in Exhibit 1, authored by Jason Hildago, in which CAI Investments' CEO Chris Beavor confirms

that CAI was tasked with presenting an appropriate sewer plan to the City of Reno, stating, "I said fine, so we invested in developing a new sewer design." He added, "We then went around and talked to everyone." Furthermore, in the same article under the subsection titled "CAI Investments taps out from sewer realignment project," Mr. Beavor acknowledges, "I had to go back to the city and said, 'Look, I've done everything in my power for nine months. I've spent money. Ultimately, this is a city of Reno sewer line. It's not my problem, but it's preventing me from building.'"

In response to a public records request from Plaintiff, the City produced a November 21, 2022 email from Garrett Gordon, attorney for CAI, to Reno City Manager Doug Thornley  and Chris Pingree, Director of Development Services for the City, stating that their efforts to negotiate with Mr. Speth were not successful and that CAI and the City "...need to work together to find a solution." See Exhibit 2 attached hereto.  The City also produced an email from Mr. Gordon dated November 29, 2022 showing a meeting was arranged between the City Manager, Mr. Thornley, and CAI to discuss the issues surrounding the sewer main that same day.  See Exhibit 3.  On January 17, 2023, Plaintiff was contacted by Assistant Public Works Director Khalil Wilson about the City taking over the sewer main relocation project for Reno Kimpton.  *See* Exhibit 4.  Two days later, on January 19, 2023, Mr. Speth sent an email to Chris Pingree questioning why the City had taken over the sewer project for the Reno Kimpton: " Something smells. Please explain how this originated?

It appears that City of Reno is now in the business of creating and funding Sewer Rerouting Projects on behalf of the Kimpton Project."  See Exhibit 5.

The current sewer lateral at 247 Court St. is entirely on the property.  The most recent version of the City's plans, attached hereto as Exhibit 6, shows that the new sewer lateral proposed by the City will add approximately 81 feet to the existing sewer lateral on a different part of Plaintiff's property, some of which will be placed under Arlington Ave.  Under Reno Municipal Code, 12.18.050, the City expressly disclaims any responsibility for sewer laterals, which the City asserts are owned by property owners.

As explained in the Declaration of Matt Speth in Exhibit 7, in September 2022, CAI Investments, represented by Ross Penny, reached out to discuss relocating the sewer main. The owners of 247 Court Street declined involvement. However, by January 17, 2023, the City of Reno Public Works took over the sewer line rerouting. Since then, communication with the City has been fraught with delays, evasiveness, and unclear responses. Various construction plans provided by the City have errors, such as incorrect mapping of the existing sewer main.  The top priority for the owners is the continuous operation of the rental property at 247 Court Street and ensuring that the eight business tenants there are not disrupted. Any prolonged construction can impede business, threatening the income derived from the tenants, which is vital for the building's survival as a rental property.  Before September 2022, the owners were unaware of any problems with the existing sewer main. It appears the proposed construction aims solely to support the Reno Kimpton development. This coerced involvement in the project brings no benefits to 247

Court Street. Instead, it endangers its current infrastructure and magnifies potential future liabilities. The City's request for a $90,000 bond is unaffordable for the property owners.

**Reply to the City's Arguments**

The City argues that Section 18.08.707 of the ALDC only applies where a party applies to have a sewer line abandoned.  When the City of Reno assumed responsibility for the sewer realignment linked to the Kimpton project, they sidestepped the standard procedure. This move exempted the Reno Kimpton from submitting an abandonment application, as required by the City's Land Development Code.  Specifically, Section 18.08.707 of the Code details the special procedures for the abandonment of easements, and the associated notice and hearing provisions.  The City also argues that RMC Section 12.16.3000, which requires a hearing for termination of sewer service, only applies to the stormwater system.  However, that entire section of the code, i.e. Chapter 12.16, pertains to "Sewer Service."  Section 12.16.3000(a), entitled "Termination of service," states:

> (a)The public works director may terminate or cause to be terminated ***sewer service*** to any premises in violation of any provisions of this chapter if a discharge of effluent causes or threatens to cause a condition of contamination, pollution or nuisance. Prior to termination of service, the public works director shall notify the owner in writing of such property that service is intended to be so terminated and conduct a hearing. Such notice shall be mailed to the owner as his name and address are shown on the real property assessment rolls on which general taxes are collected, and a copy shall be delivered to the tenant or posted conspicuously on the property. The notice shall state the date of proposed termination of service and the reasons therefore and the date the city council shall hold a hearing upon such intended termination. Such hearing shall not be held less than ten days subsequent to the giving of notice as herein required.

> ***[emphasis added]***

The City claims that the City Attorney's letter on July 12, 2023, addressed to the Plaintiff's lawyer in document ECF #1-6, was merely to remind them of the scheduled discontinuation date for the old sewer main service. This letter subsequently led to the City receiving permission to enter 247 Court St. to finalize their plans, as mentioned in document ECF #6-2. However, it's important to clarify that the City Attorney's July 12, 2023 letter presented a clear ultimatum: Allow us access to your property for the intended work, or face the possibility of not being able to occupy your property. Feeling pressured, the 247 Court Street property owners conceded and permitted access for planning. Despite this, the City now claims in their Motion's footnote 4 that without the Plaintiff's cooperation, the sewer service for 247 Court St. won't be shifted to the new sewer main. The position in the Motion is inconsistent with the City's message in the July 12, 2023 letter.

### a. Likelihood of Success on the Merits

The City misinterprets the definition of a "taking" by referencing *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 32 (2012) and suggesting a taking only refers to a "permanent occupation of property." Yet, the very same case clarifies that temporary takings require compensation. *Id.* at 34. The Court explicitly stated that there is no broad exception for temporary takings. *Id.* In this case, the City aims to do both: temporarily occupy Plaintiff's land for installation and then permanently relocate the lateral, where it will stay indefinitely.

The City also argues that the Plaintiff requires a new lateral, not the City, and that because of this, this matter does not pertain to public use. The City's main intent for the work it seeks to conduct at 247 Court Street is for "public use," i.e. as

part of its larger goal of upgrading and replacing its sewer infrastructure to facilitate the Reno Kimpton project.  See *Kelo v. City of New London*, 545 U.S. 469, 472, 125 S. Ct. 2655, 2658 (2005) embracing the interpretation of public use as used in the takings clause as work done for a "public purpose." See also NRS 37.010(1)(h) listing "sewerage" as a public use.   The current sewer lateral at 247 Court St. is functioning without issues. If not for the broader plans of the City and Reno Kimpton, there would be no need to relocate the lateral and deal with the related inconveniences, including the work on the Plaintiff's property that Plaintiff does not want or need. It's clear from the facts that the City is leveraging its governmental power to force the Plaintiffs to permit public work on their property without offering fair compensation.  As shown in the Motion, the forced physical occupation of the Plaintff's property, which the City admits is required for it to carry out its plans, is *per se* a taking per *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2073 (2021). Further, the installation of a new sewer lateral to accommodate the City's plans is also a *per se* taking under *Loretto v. Teleprompter Manhattan Catv Corp*., 458 U.S. 419, 430, 102 S. Ct. 3164, 3173 (1982).  Further, as detailed in *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 133 S. Ct. 2586, 2594 (2013), by requiring a property owner to grant a public right-of-way as a precondition for obtaining a building permit, the government can persuade the owner to willingly relinquish property that, under the Fifth Amendment, would typically necessitate fair compensation.  Here, similarly, the City is threatening to cut off an essential utility to the Plaintiffs unless they allow infrastructure work on its property without compensation. By doing this, the City is trying to pressure the Plaintiffs into giving

up their Fifth Amendment rights. The City's response to the Motion does not address the unconstitutional conditions doctrine issue.

### b. Irreparable Harm

The City argues that Plaintiff won't face irreparable harm because (1) no property is being taken, and (2) the grievances Plaintiffs outlined only pertain to financial loss.  Here, the City completely fails to address Plaintiff's argument and authorities that being cut off from an essential utility will destroy their business, that is, renting their property to other businesses to use as office space will no longer be feasible if there is no sewer service on the property. While financial loss is typically not deemed as irreparable harm, the imminent threat of being forced out of business absolutely is.  *N. Plains Res. Council v. United States Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1034 (D. Mont. 2020) citing hiQ Labs, Inc. v. LinkedIn Corp., 938 F.3d 985, 993 (9th Cir. 2019).

### c. Balance of the Equities

The City states, "Plaintiff's arguments are wrong and there is no taking at issue." However, this is a blanket dismissal without any substantive reasoning. Simply stating that the Plaintiff's arguments are wrong does not address or debunk the actual arguments made by the Plaintiff regarding the balance of the equities. The Plaintiff asserts that the strength of their constitutional claim means they should be favored, and the City counters this by simply saying the Plaintiff is wrong, without providing a reason, and then concludes that the situation must, therefore, favor the City.  The City's argument is illogical.

///

8

**d. The Public Interest Is Served**

The Defendant, in their Response, attempts to shift the narrative and mischaracterize the Plaintiff's intentions. The core of the Plaintiff's argument revolves around the assertion that the most significant consequence of a preliminary injunction is a delay to the City's planned sewer replacement project *on the Plaintiff's property*. This in no way implies that the Plaintiff is dismissive of environmental or public health concerns. The urgency presented by the City is overstated, especially if the immediate repercussions are just a delay.  However, if the entirety of the facts are considered, the City wants the Reno Kimpton project to succeed, and this sewer main replacement is essential to that goal, the City's motives become clear.

**e. Bond**

In their response, the City claims they should receive a bond of over $90,000. They justify this amount by claiming it's the cost of the work on the Plaintiff's property, which they won't be able to immediately do if the Court and the Plaintiffs prevent them from proceeding.

Under FRCP 65(c), the purpose of a bond is to ensure protection against potential damages or losses that might occur due to the court's decision. The bond amount should be reflective of the potential harm or loss that the requesting party might suffer.  The City's argument essentially argues: We want a bond equivalent to the cost of the work we plan to do because if we're not allowed to do the work, it will cost us that amount. This is akin to arguing: We should be compensated for not doing what we might not be allowed to do.  The bond, in this scenario, would not

be compensating for actual harm, but rather for a hypothetical situation that the City itself proposes.

Further, the City's argument would indirectly allow the City to benefit financially from a potential court decision against the City. The City's request for a $90,000 bond, based on the cost of work they might not be permitted to do, presents a paradox. The logic, when fully unpacked, fails to present a clear and reasonable justification for the requested amount.

The City also speculates a large expense tied to a potential emergency relocation, implying that the old sewer main might catastrophically fail. However, the evidence doesn't support this as the reason for the sewer main's replacement. Instead, it's evident that the sewer main replacement is primarily due to the Reno Kempton project.

**Conclusion**

Given the City's failure to follow its own rules, the Nevada Consitution, and the 5th Amendment, the Court should prevent the City from cutting off the Plaintiff's sewer service until the Plaintiffs are paid just compensation for the use of their property for a public purpose.

WHEREFORE, Plaintiff requests that the Court provide the following relief:

(1) Schedule a hearing to receive evidence if the Court deems necessary; and

(2) Issue a preliminary injunction against the City as described above.

///

///

///

RESPECTFULLY SUBMITTED this: Sep 5, 2023

By: **_/s/ Luke Busby, Esq._**

Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**Exhibit List**

1. RE_ Kimpton Sewer Plan.pdf
2. Request for meeting for City Sewer Project at 247 Court Street.pdf
3. Fwd_ Arlington Sewer Rerouting Project_.pdf
4. Court St Lateral_Revised_08.16.2023 (1).pdf
5. Reno Kimpton hotel_ Old house takes on a developer, the city.pdf
6. Gordon Sewer Plan Email.pdf
7. Declaration of Matt Speth

## **CERTIFICATE OF SERVICE**

I certify that on the date shown below, I caused service to be completed of a true

and correct copy of the foregoing Document by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

_____ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

___X___ delivery via electronic means (fax, eflex, NEF, etc.) to:

Karl Hall, Esq.
Susan Rothe, Esq.
Mark Hughes, Esq.
Reno City Attorney
Civil Division
PO Box 1900
Reno, NV 89505

**DATED** this  Sep 5, 2023

By:    /s/  Luke Busby, Esq.