DARREN J. LEMIEUX, Nevada Bar No. 9615
LUCY C. CROW, Nevada Bar 15203
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, Nevada 89501
Tel: 775.823.2900
Fax: 775.823.2929
Email: DLemieux@lewisroca.com
LCrow@lewisroca.com

*Attorneys for Intervenor*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MARY SPETH, as trustee of the THERESA FRISCH TRUST,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF RENO, a political subdivision of the State of Nevada,<br><br>Defendant,<br><br>and<br><br>CAI RENO HOTEL PARTNERS LLC<br><br>Intervenor. | Case No.: 3:23-cv-396<br><br>**CAI RENO HOTEL PARTNERS LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 6]** |

As CAI Reno Hotel Partners LLC's ("CAI"), Motion to Intervene has been granted, Intervenor CAI by and through its counsel of record, hereby opposes Plaintiff's Motion for Preliminary Injunction (ECF No. 6). This Opposition is supported by the attached Memorandum of Points and Authorities and the papers and pleadings on file in this action. CAI cross-references the exhibits attached to the Motion to Intervene as "MTI" in citations.

/ / /

/ / /

/ / /

/ / /

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

DATED this 6th day of October, 2023.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Darren J. Lemieux*

Darren J. Lemieux, Bar No. 9615
Lucy C. Crow, Bar No. 13757
One East Liberty Street, Ste 300
Reno, Nevada 89501
Tel.: 303.623.9000
Fax: 303.623.9222
dlemieux@lewisroca.com
lcrow@lewisroca.com

*Attorneys for Defendant-Intervenor*

One East Liberty Street, Suite 300
Reno, Nevada 89501
LEWIS ROCA

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Every day that Plaintiff is connected to the sewer line running through its property and to the CAI property, Plaintiff's sewage is leaking out of the decrepit sewer line and into the CAI property abutting the Truckee River. Yet, Plaintiff asks for the extraordinary relief of enjoining the City from engaging in a minimally invasive construction project to realign Plaintiff's sewer access from the leaking sewer line to the City's current sewer system that services all surrounding properties. In effect, Plaintiff asks this Court to issue a preliminary injunction allowing Plaintiff to continue polluting the land and the Truckee River (and to continue trespassing on CAI's property, being a nuisance to CAI, and interfering with CAI's development of a hotel on its property).

Plaintiff does not even approach its burden to show it is entitled to extraordinary relief. Plaintiff cannot succeed on the merits of its claims against the City because the City's project benefitting Plaintiff, and giving Plaintiff access to a functioning sewer system, cannot be construed as an unconstitutional "taking." In truth, Plaintiff brings its unsustainable claims merely to interfere with (or better yet, to prevent) CAI's development of a hotel on the property next to Plaintiff's property. This is an improper basis to seek a preliminary injunction, or to initiate litigation (because Plaintiff already had its opportunity to object to the project). Unlike Plaintiff, CAI brings its claims for a proper purpose and is far more likely to succeed on its trespass, nuisance, negligence, and interference with economic advantages claims against Plaintiff for Plaintiff's continuous dumping of its sewage.

Plaintiff will not suffer irreparable harm either because the City's project will not terminate Plaintiff's access to the sewer system altogether. The City's project will merely realign access to the system so that Plaintiff is disconnected from the rotting sewer line and its sewage no longer seeps into the ground. Regardless, any harm from that realignment can be remedied with monetary damages.

Equally important, the balance of equities heavily weighs against a preliminary injunction because the City and CAI's interests—in the sanitary disposal of waste, stopping Plaintiff from leaking sewage into the land, and developing the CAI property—far outweigh any minor

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

inconvenience to Plaintiff of having its sewage connection realigned. The public's interest also lies in promoting commercial activity and protecting the environment and the Truckee River from Plaintiff's contamination. Accordingly, Plaintiff cannot satisfy its high burden for a preliminary injunction, let alone its burden to provide actual evidence of a likely harm, especially in the face of the harm posed to CAI and the public.

Attempting to distract from the merits of its ill-fated Motion, Plaintiff has crafted a false narrative that the City is realigning Plaintiff's access to the sewer system solely for the benefit of CAI. While it is true that Plaintiff's sewage access must be realigned because it is harming CAI and delaying its development of a hotel, it is also true that the sewer access must be realigned regardless of whether CAI is developing the neighboring property. Plaintiff's sewage is seeping out of the cracked sewer line and into land adjacent to the Truckee River. This poses a severe environmental risk to the Truckee River, which is why the City has endeavored to connect the surrounding properties to the new sewer system.

CAI respectfully requests that this Court deny the Motion. If, however, this Court grants the Motion, Plaintiff should be required to post a bond to offset harm to the City and CAI if the sewage line catastrophically fails and the harm to CAI of having its project halted while this action is pending.

## II. FACTUAL BACKGROUND

### A. Plaintiff Refuses to Realign its Sewer Access and Plaintiff's Sewer Leaks into the CAI Property, Adjacent to the Truckee River

CAI owns five properties bordering the Truckee River in downtown Reno, Nevada, that CAI intends to develop into a Kimpton Hotel ("Kimpton"). *See* **MIT at Ex. 1** ¶ 3, **Ex. 5, Ex. 6.** Those five properties are located at 260 Island Avenue (APN 011-112-02), 0 Island Avenue (APN 011-112-03), 223 Court Street (APN 011-112-06), 0 Court Street (APN 011-112-07), and 219 Court Street (APN 011-112-12) (collectively, "CAI Property"). *Id.* at **Ex. 6**. Plaintiff represents the Theresa Frisch Trust, which owns the neighboring property located at 247 Court Street (APN 011-112-11) ("Plaintiff's Property") with a house called the "Frisch House." *Id.*; *see also* ECF No. 1 ¶ 12.

Both properties and the adjacent Truckee River are depicted below (**MTI at Ex. 6**; *see also id.* at **Ex. 5**):

There is a 70-year-old main sewer line that runs from Arlington Avenue through Plaintiff's Property to the CAI Property. ECF No. 11-6 (map depicting sewar lines); ECF No. 1 ¶ 15. This main sewer line connects to lateral sewer lines running to the house on Plaintiff's Property. *See* ECF No. 11-6. Sewage from Plaintiff's Property then runs downstream (west to east) to the CAI Property.[1] *See id.*; *see also* **MTI at Ex. 2** ¶¶ 5-6; *id.* at **Ex. 7**. Plaintiff's sewage is the only sewage upstream from the CAI Property that still runs through the old clay lines.[2] *See id.* at **Ex. 2** ¶ 7.

In August 2022, CAI retained an inspector to evaluate the main sewage line and lateral lines that run from Arlington Avenue through Plaintiff's Property to the CAI Property. *Id.* at **Ex. 2** ¶¶ 8-9; *id.* at **Ex. 7**. The inspector snaked a video camera through the old clay sewer lines, which revealed that the clay sewer line is deteriorating and leaking sewage from Plaintiff's Property into the CAI Property. *See id.* at **Ex. 2** ¶ 9; *id.* at **Ex. 7**; *see also id.* at **Ex. 1** ¶ 7. The senior project manager for

---

[1] Downstream of Plaintiff's Property is east of Arlington Avenue, toward Rainbow Street, and parallel to the Truckee River, Island Avenue, and Court Street. *See* **MTI at Exs. 5, 6, 7.** In **Exhibit 6** to the Motion to Intervene, which is the photograph on the preceding page, this is left to right.

[2] Park Towers, a condominium building on Island Street situated adjacent to both Plaintiff's Property and the CAI Property, was previously connected to the clay sewer line, but its sewer access has since been realigned. **MTI at Ex. 2** ¶ 7.

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

CAI's contractor, Ross Penney, also inspected the clay sewer line through a manhole on the CAI Property and could visibly see the clay sewer line cracked and leaking. *Id.* at **Ex. 2** ¶ 9. Mr. Penney is aware that the City's own contractor, Q & D Construction, inspected the sewer line too and concluded that it is deteriorating and cracked in numerous places. *Id.* ¶ 10. When Plaintiff's sewage flows from Plaintiff's Property to the CAI Property, Plaintiff's sewage seeps directly into the CAI Property (and likely into Plaintiff's Property too). *Id.* ¶ *11; *see also id.* at **Ex. 1** ¶ 7.

In addition to polluting the CAI Property, Plaintiff's sewage has entirely halted CAI from being able to obtain funding or start construction of the Kimpton. **MTI at Ex. 1** ¶¶8-9; *id.* at **Ex. 2** ¶ 14. Every single month that Plaintiff continues to pollute the CAI Property, CAI is forced to pay (through itself or its guarantor) $150,000 for its loan on the CAI Property *without* being able to move forward with the development. *Id.* at **Ex. 1** ¶ 9. Indeed, because of Plaintiff's actions, CAI cannot obtain new investors and risks losing its agreement with IHG Hotels & Resorts to build the Kimpton.[3] *Id.* ¶ 8. If IHG Hotels & Resorts terminates its agreement for the construction of the Kimpton, the CAI Property could lose a significant amount of its value. *Id.* ¶ 10.

To avoid these issues, CAI initially attempted to resolve the sewer line issues at CAI's own expense. *See, e.g.*, ECF No. 11-2 (Mr. Penney informing Plaintiff's representative, "[W]e are prepared to perform the work to connect all 3 parties directly to the city sewer system <u>at our expense</u>" (emphasis added)). While the other property upstream from the CAI Property agreed to realignment, Plaintiff unreasonably refused to do so because Plaintiff wants to prevent CAI from constructing a parking garage and believes that refusing to fix the sewer line will prevent the construction. *See id.*; *see also* ECF No. 11-5 (Mr. Speth asserting that fixing the sewer line is a "scheme to defraud . . . so [CAI] can build a parking garage"). In other words, Plaintiff refuses to connect to the newer line, and wishes to continue using the rotting line, to halt the development of the Kimpton at an immense cost to CAI.

The decaying main and lateral sewer lines, however, must be terminated regardless of whether CAI is constructing the Kimpton because the lines are failing and posing an environmental

[3] IHG Hotels & Resorts owns the Kimpton brand. *See, e.g.*, 2022 Annual Report, available at https://www.ihgplc.com/en/-/media/ihg/annualreports/2022/annual-report-2022.pdf.

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

risk to Plaintiff's Property, the CAI Property, and the Truckee River. ECF No. 7 at 3. Given these concerns, the City took its own action. *See* ECF No. 7 at 2-3; ECF No. 11-4. As part of its larger efforts to update the sewer system in Reno, Nevada, the City set out to terminate the 1950s sewer line and connect Plaintiff's Property to the City's up-to-date sewage system. *See* ECF No. 7 at 2-3; ECF No. 11-4. On May 22, 2023, the City informed Plaintiff that Public Works was scheduled to discontinue service and abandon the existing City sewer main on September 1, 2023. *See* ECF No. 1-5. The City gave Plaintiff the option to either allow the City to realign and reconnect the sewage line at the City's expenses or to hire Plaintiff's own contractor to perform the work. *See id.* On July 12, 2023, the City sent a follow-up letter stating that the City was prepared to commence the work on August 1, 2023, and it would take approximately three weeks to complete. ECF No. 1-6. While the work itself would take three weeks to complete, the switchover would take less than one day. *See* ECF No. 7 at 4. In other words, Plaintiff's Property would be connected to a sewer line during construction, except for part of one day. *See id.* The construction is also minimally invasive, requiring the City to only dig a trench for the new lateral connection. **MTI at Ex. 2** ¶ 12.

Despite the 70-year-old clay sewer line oozing sewage into the CAI Property and likely Plaintiff's Property too, Plaintiff has refused the City's efforts to connect to the new system and abandon the rotting clay line. *See generally* ECF No. 1.

**B. <u>Plaintiff's Claims Against the City of Reno</u>**

Attempting to halt the development of the Kimpton and to stop the City from cutting off service to the leaking sewer line, Plaintiff filed this action and moved for a preliminary injunction. *See* ECF No. 1; ECF No. 6. Against the City, Plaintiff brings four claims: (1) under 42 U.S.C. § 1983 for violation of the Takings Clause of the Fifth Amendment, alleging that the City has taken Plaintiff's private property for public use without just compensation (ECF No. 1 ¶¶ 44-55), (2) for inverse condemnation, alleging again that the City has taken Plaintiff's private property for public use without just compensation (*id.* ¶¶ 56-64), (3) for declaratory relief under 28 U.S.C. § 2201, seeking a declaration that the City has taken Plaintiff's property and Plaintiff is entitled to compensation (*id.* ¶¶ 65-71), and (4) for injunctive relief, seeking to restrain the City from "cutting off Plaintiff's sewer service until just compensation is first paid" (*id.* ¶¶ 72-80). As set forth below,

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

Plaintiff's claims are factually and legally untenable and its requested relief must be denied.

Two days after bringing this action, Plaintiff filed its Motion for a Preliminary Injunction, asking the Court to issue an injunction to "prevent the City from cutting off the Plaintiff's sewer service until Plaintiffs [*sic*] are paid just compensation for the use of their property for public purposes." ECF No. 6 at 14. In effect, Plaintiff seeks an order from this Court allowing the 1950s clay line to continue leaking into the CAI Property and to allow Plaintiff to continue trespassing on CAI Property. *See generally id.* Plaintiff did not attach any evidence to its Motion, relying solely on its Complaint and documents attached to it. *See id.*

The City opposed the Motion on August 29, 2023, correctly pointing out that Plaintiff's claims cannot succeed on their merits because nothing is being taken from Plaintiff, including because Plaintiff is receiving access to a new sewage line *and* the City is paying for it. *See generally* ECF No. 7. The City also explained that Plaintiff will not suffer any harm by receiving access to a new sewer line, least of all irreparable harm. *See id.* In Plaintiff's September 5, 2023, reply, Plaintiff cited an article in the Reno Gazette Journal as "evidence" that the sewer line is being realigned solely for CAI while arguing (without evidence) that the City's construction plans are incorrect. *See* ECF No. 9. Plaintiff also submitted a declaration from Plaintiff's husband, Matt Speth, in which he summarily concludes that construction on Plaintiff's Property will interrupt business. *See generally* ECF No. 9.

**C. <u>CAI's Requested Intervention and Counterclaims</u>**

Although Plaintiff did not bring any claims against CAI, Plaintiff's claims against the City directly impact CAI because Plaintiff seeks permanent and preliminary injunctive relief to continue using a sewer line that is leaking sewage into the CAI Property, and Plaintiff does so to delay or stop the development of the Kimpton. *See generally* **MTI**. Plaintiff's sewage is severely damaging CAI because its property is being polluted, CAI cannot move forward with raising capital or construction, and CAI could lose the ability to construct the Kimpton altogether, resulting in a multi-million-dollar loss to CAI because of Plaintiff's sewage. **MTI at Ex. 1** ¶ 10. CAI has sought to intervene in this action and assert counterclaims for trespass, nuisance, negligence, and interference with economic advantage. *See* **MTI at Ex. 4**.

## III. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008). A preliminary injunction can be awarded only upon "a clear showing that the plaintiff is entitled to such relief." *Id.* "To obtain this relief, a plaintiff must establish (1) that [it] is likely to succeed on the merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Fraihat v. U.S. Immigration & Customs Enforcement*, 16 F.4th 613, 635 (9th Cir. 2021).

The moving party must make a "'clear showing' of evidence that supports each relevant preliminary injunction factor." *Hartford v. Ferguson*, 3:23-CV-05364-RJB, 2023 WL 3836230, at *2 (W.D. Wash. June 6, 2023) (quoting *Winter*, 129 S. Ct. at 365) (emphasis added). "[A] court cannot grant a preliminary injunction based on 'pronouncements [ ] grounded in platitudes rather than evidence.'" *Schwartz-Tallard v. HSBC Bank USA, Nat'l Ass'n*, 2:17-CV-02328-RFB-NJK, 2018 WL 6566541, at *2 (D. Nev. Nov. 20, 2018) (quoting *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)); *see also W. Watersheds Project v. Bureau of Land Mgmt. of U.S. Dep't of the Interior*, 3:21-CV-00103-MMD-CLB, 2021 WL 3779147, at *5 (D. Nev. July 23, 2021) (Chief J. Du) (ruling that speculative evidence was insufficient to merit a preliminary injunction).

## IV. THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED

Plaintiff asks this Court to enter an injunction allowing Plaintiff's sewage to continue to leak into and trespass onto the CAI Property merely because Plaintiff refuses to allow the City to proceed with construction paid for by the City. Plaintiff's request for a preliminary injunction should be denied because Plaintiff fails to satisfy its burden on any of the preliminary injunction factors. Plaintiff cannot succeed on the merits of its claims because the City is not taking anything from Plaintiff, but giving Plaintiff access to a new and functioning sewer system. Plaintiff will not suffer an irreparable injury because allowing the City to proceed benefits Plaintiff and any harm can be remedied with a monetary award. And the balance of equities and public interest favor stopping Plaintiff from leaking sewage into riverfront properties and allowing the development of

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

the Kimpton to proceed. The Motion should be denied.

**A. Plaintiff Cannot Succeed on the Merits of Its Claims**

Plaintiff falls woefully short of making a clear showing that it will succeed on the merits of its claims. Plaintiff repeats verbatim the "factual" allegations in its Complaint, then summarily concludes that "the facts above describe that the City of Reno is placing unconstitutional conditions on the continued occupation of the Frisch House." *Compare* ECF No. 1 ¶¶ 35-43 *with* ECF No. 6 at 7-10; *see also compare* ECF No. 1 ¶¶ 8-31 *with* ECF No. 6 at 2-5. Plaintiff cannot satisfy its burden by relying upon allegations alone. *See, e.g.*, *Panno v. Wells Fargo Bank, N.A.*, 2016 WL 7494896, at *5 (C.D. Cal. June 13, 2016) (explaining that a plaintiff seeking a preliminary injunction cannot "simply point[ ] to allegations in his Complaint"); *see also Knauer v. Kaiser Permanente Int'l, Inc.*, 94 Fed. App'x 470, 471 (9th Cir. 2004) (ruling that it is an abuse of discretion to issue a preliminary injunction where there is no evidence in the record that plaintiffs are likely to succeed on the merits). In its Motion, Plaintiff did not present any evidence in support of its summary conclusions that it prevails on the merits of its claims. *See* ECF No. 6. Although Plaintiff attached some documents (and RGJ article and conclusory declaration) to its Reply brief, none of the documents further Plaintiff's position. *See* ECF No. 11.

Plaintiff brings three substantive claims (one for a "taking" in violation of the Fifth Amendment's Takings Clause, a second for inverse condemnation, and a third for injunctive relief) and one request for declaratory relief that is dependent upon the Takings Clause claim. *See* ECF No. 1 ¶¶ 44-80. Plaintiff cannot succeed on the merits of any of these claims.

First, "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). "That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities." *Id.* at 2167-68 (emphasis added). Here, the City plans to abandon its own main line and realign Plaintiff's lateral line to a new main line at the City's own expense. *See* ECF No. 1-5. Plaintiff will be the owner of the new lateral line paid for by the City, and Plaintiff's old line will

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

stop leaking sewage into the CAI Property. *Id.*; *see also* ECF No. 7 at 6. The City is not "taking" any private property; rather, it is giving Plaintiff access to a newer, better system. Plaintiff nevertheless insists that the City is temporarily taking its property without cause, and solely to accommodate CAI, because "[t]he current sewer lateral at [Plaintiff's Property] is functioning without issues." ECF No. 11 at 7. But the current lateral line is <u>not</u> functioning without issue. **MTI at Ex. 1** ¶ 7; *id.* at **Ex. 2** ¶¶ 8-11. The current lateral line is pushing Plaintiff's sewage into the main line, which is then leaking Plaintiff's waste into the CAI Property. *Id.* at **Ex. 1** ¶ 7; *id.* at **Ex. 2** ¶ 11; *id.* at **Ex. 7**. This poses a serious risk to the public and CAI and exposes Plaintiff to liability for damages incurred from its sewage and contamination. Regardless, this claim does not provide a basis for a preliminary injunction because there is no "taking" as long as the party is compensated "after the fact." *Knick*, 139 S. Ct. at 2167-68.

Second, an inverse condemnation claim requires "(1) a taking (2) of real or personal interest in private property (3) for public use (4) without just compensation being paid (5) that is proximately caused by a governmental entity (6) that has not instituted formal proceedings." *Fritz v. Washoe Cty.*, 376 P.3d 794, 796 (Nev. 2016). These six requirements are not met here: (1 & 2) the City is not "taking" property, but giving Plaintiff property at the City's expense, (3) the new lateral sewer line is not for "public use," but Plaintiff's use and will stop Plaintiff's sewage from leaking into the CAI Property, (4) the City has agreed to pay for the entire realignment and new lateral line (*see* ECF No. 1-5), (5 & 6) while the City is the "governmental entity" causing the realignment, the City did so through proper means and repeatedly contacted Plaintiff about the need to realign the sewer (*e.g.*, *id.*).

Third, Plaintiff seeks permanent injunctive relief to stop the City from terminating service to the rotting main sewer line and leaking lateral line until "just compensation" is paid. ECF No. 1 ¶¶ 72-80. To obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

(2006). These requirements overlap with the preliminary injunction standard and are each discussed *infra* in Sections IV(B), (C), and (D). Briefly, Plaintiff cannot show it will suffer irreparable harm or that monetary damages are inadequate because Plaintiff seeks "just compensation," which is inherently monetary. The balance of hardships and public interest weigh in favor of denying injunctive relief because CAI and the public's interests in stopping sewage from leaking into the land and Truckee River are far stronger than Plaintiff's interest in using a 70-year-old rotting sewer line. Like its request for a preliminary injunction, Plaintiff's request for a permanent injunction will fail.

Fourth, Plaintiff seeks a declaration that the City has taken Plaintiff's property in violation of the Fifth Amendment (ECF No. 1 ¶¶ 65-71), but Plaintiff is not entitled to this relief because there has been no taking. The declaratory relief claim necessarily fails because the Takings Clause claim fails.

Accordingly, Plaintiff has failed to satisfy its burden for the first requirement for a preliminary injunction because Plaintiff has not proffered evidence to support its claims and cannot do so because they are not meritorious.

### B. <u>Although Plaintiff Will Not Suffer Irreparable Harm, CAI Will Suffer Irreparable Harm if the Preliminary Injunction is Granted</u>

Plaintiff cannot satisfy its second burden either because Plaintiff will not suffer irreparable harm if its access to the sewer system is realigned and the damaged lined abandoned. At most, these are monetary injuries that can be remedied without injunctive relief.

"A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is likely in the absence of preliminary relief." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011). "<u>Mere possibility of harm is not enough.</u>" *Id.* (emphasis added). "Purely monetary injuries are not normally considered irreparable." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). "Allegations of irreparable harm must be supported with <u>actual evidence</u>, and not merely conclusory statements or unsupported allegations." *Nevada v. United States*, 364 F. Supp. 3d 1146, 1151 (D. Nev. 2019) (emphasis added).

Plaintiff argues that it will suffer an irreparable injury if the City proceeds because its

"property may not be occupied, and the eight tenants who currently rent business space at the office will be compelled to rent places to do business elsewhere," which supposedly could cause Plaintiff to go out of business. ECF No. 6 at 10-11; *see also* ECF No. 11 at 8 (repeating arguments). Plaintiff severely misunderstands the irreparable harm requirement.

The question before the Court is what will happen in the "absence of preliminary relief." *Enyart*, 630 F.3d at 1165. Meaning, the question is not what will happen if Plaintiff is left entirely without a connection to a sewage system; the question is what will happen if the City proceeds to connect Plaintiff's Property to the City's current sewage system and abandon the leaking sewage line. In the absence of a preliminary injunction, Plaintiff will still have access to a sewer line, including during construction except for part of a day. ECF No. 7 at 4. It is doubtful that losing connection to the sewer system for less a day will harm Plaintiff and, if it does, this harm is not irreparable and can be remedied with monetary damages.[4] While Plaintiff makes a summary conclusion based on Mr. Speth's declaration that the City's construction plans have "errors," Plaintiff does not explain what these supposed errors are, what harm they could possibly pose to Plaintiff, or what qualifications Mr. Speth has to opine on the sufficiency of construction plans. *See* ECF No. 11-7 ¶ 6. Mr. Penney, a construction project manager with nearly two decades of experience in large-scale construction, has declared that the trenching of Plaintiff's Property is minimally invasive. **MTI at Ex. 2** ¶ 12. Accordingly, Plaintiff has not satisfied its burden to show that it will suffer irreparable harm, let alone its burden to provide actual evidence that a harm is likely to occur.

Instead, Plaintiff dramatizes the purported harm to it to halt CAI from developing the Kimpton. This is evident from Mr. Speth's statements referring to the sewer realignment as a "scheme to defraud" Plaintiff so that "[CAI] can build a parking garage." ECF No. 11-5. The Kimpton project has already been approved by the City and Plaintiff had its opportunity to object to the project. Plaintiff cannot now interfere with the development through alternative methods (at

[4] The reconnection could happen on a weekend and not disrupt business at all. And if the reconnection is done on a weekday, Plaintiff or the City could easily retain the services of a temporary restroom facility. There is no need for Plaintiff's tenants to suddenly abandon their offices for a minor inconvenience and doing so would likely be a breach of their leases anyway.

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

a significant cost to CAI and the public).

To be sure, even if Plaintiff's specious analysis applied, it is well-established that harm from lost income (such as rent from tenants and the costs to replace them) can be remedied with money. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (explaining that "[t]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury," and holding that a football stadium failed to show it would suffer irreparable harm if it lost the Raiders football team as a tenant (internal quotation marks and citation omitted)); *see also Mountain Paradise Vill., Inc. v. Fed. Nat. Mortg. Ass'n*, 2:13-CV-01813-GMN, 2013 WL 5637931, at *2 (D. Nev. Oct. 15, 2013) (finding argument that a party would suffer irreparable harm in the form of "loss of the rental income from the property" unpersuasive); *Gerber-Williams v. Aurora Loan Servs., LLC*, C11-5393BHS, 2011 WL 2357644, at *2 (W.D. Wash. June 13, 2011) ("The Court finds that the loss of rental income is not irreparable harm."). Plaintiff seeks monetary damages in the form of "<u>just compensation</u> [to be] first <u>paid</u> for the taking of Plaintiff's property." ECF No. 1 at 14 (emphasis added); *see also id.* ¶ 73. Plaintiff even concedes that its alleged harms can be remedied with monetary damages, asserting "monetary damages might address some concerns." ECF No. 6 at 11.

Plaintiff also argues that its purported "threat of being driven out of business" is irreparable, but Plaintiff does not provide any credible evidence to support this argument. *Id.* (citing *N. Plains Res. Council v. United States Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1034 (D. Mont. 2020) citing *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019)). While it is generally true that closure of a business <u>may</u> constitute irreparable harm, a plaintiff must still make a showing based on actual evidence that there is a real threat to its business. *E.g.*, *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1202 (finding no irreparable harm where there was "no factual showing that . . . the [football stadium] would be unable in the near future to obtain another transfer team or new franchise as a tenant"). Plaintiff does not provide any evidence that it will be unable to replace lost tenants or that the loss of tenants will force Plaintiff out of business. The only evidence proffered by Plaintiff is the self-serving and conclusory declaration of Mr. Speth, "If we receive rent from the tenants, the business will continue to exist. If not, it won't." ECF No. 11-7 ¶ 9. Mr. Speth does

not attest that these tenants are irreplaceable, does not provide any indication that the tenants can simply break their leases without consequences, and does not attest that the business is in such disrepair that it will, indeed, go out of business if it loses this income. *See id.*

Plaintiff will not suffer irreparable harm if the City proceeds to connect Plaintiff's Property to the City's current sewage system and terminates service to the rotting clay line. Plaintiff's arguments about loss of income and, possibly, going out of business are irrelevant to this Court's analysis because they focus on only what would happen if the City disconnected Plaintiff from all sewage systems and never reconnected Plaintiff—which is not what the City intends to do. Regardless, these purported harms could be remedied with money. Therefore, Plaintiff has not carried its burden to show it is likely to suffer irreparable harm.

**C. The Balance of Equities Weighs Against Issuing Extraordinary Relief**

The City's interest in the sanitary disposal of waste and CAI's interest in stopping Plaintiff's sewage from continuing to leak into the CAI Property heavily outweighs the purported inconvenience to Plaintiff of having its sewer access realigned at the City's cost. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S. Ct. at 376 (internal quotation marks and citation omitted).

Plaintiff asserts that "[t]he equities tip sharply in favor of relief for the Plaintiff because of the facial strength of the claim," and Plaintiff re-hashes its Takings Clause claim. ECF No. 6 at 11-12; *see also* ECF No. 11 at 8 (repeating allegations). Plaintiff also misunderstands this preliminary injunction factor. Rather than relying on the "strength" of its claim, which is the first factor, the third factor requires the Plaintiff to show that its alleged injury outweighs the injuries to the City and CAI. *See, e.g.*, *Winter*, 129 S. Ct. at 376. The only irreparable injury alleged by Plaintiff is being without sewer services, supposedly disrupting Plaintiff's business. *See* ECF No. 6 at 10-11; *see also* ECF No. 11 at 8. In his declaration, Mr. Speth asserts that Plaintiff's "main concern is the smooth and consistent operation of the rental property," not the alleged constitutional violations that can be remedied with monetary damages. ECF No. 11-7 ¶ 7. But as explained in the preceding section, Plaintiff focuses on the wrong standard because it will not be left without sewer services if

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

the City proceeds; Plaintiff will be connected to the City's newer system with less than one day of disruption to its sewer access. *See* § IV(B).

In contrast, if the project does not proceed, the CAI Property will continue to be polluted by Plaintiff's waste and the development of the Kimpton will continue to be halted (possibly indefinitely) at significant expense to CAI. *See supra* § II(B). Each month that the project is delayed because Plaintiff refuses to realign its sewer services from the rotting sewer line to the City's sewer system, CAI must pay $150,000.00 on its loan without being able to move forward with its development of the Kimpton, interest rates rise, and construction costs rise. *See* **MTI at Ex. 1 ¶¶** 9-10. IHG Hotels & Resorts could terminate the agreement to construct the Kimpton altogether, resulting in millions of dollars of loses to CAI as a direct result of Plaintiff's actions. *See id.* CAI's interests heavily outweigh Plaintiff's interests, which are further undercut by Plaintiff's ulterior motive to halt CAI's development.[5]

### D. An Injunction Harms the Public's Environmental Interests and Interests in the Development of the Kimpton

While the third preliminary injunction factor focuses on the parties' interests (*see supra* § IV(C)), the fourth factor focuses on the public's interest at large. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376 (internal quotation marks and citation omitted). The public's interest in protecting the environment is well-recognized. *See, e.g.*, *Sierra Club v. United States*, 23 F. Supp. 2d 1132, 1135 (N.D. Cal. 1998) ("[E]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." (internal quotation marks and citation omitted)). The public's interest in encouraging commercial and entertainment development is similarly well-established. *See, e.g.*, *Am. Civil Liberties Union of Nevada v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1083 (D. Nev. 1998) ("The public interest in the economic success of the Mall venture as well as in maintaining an attractive environment for commercial and entertainment activities is advanced by the denial of a preliminary injunction which would bar the enforcement of the anti-

---

[5] The City's interest in the sanitary disposal of waste similarly outweighs Plaintiff's interest. *See* ECF No. 7 at 7.

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

solicitation ordinance in the Mall.").

Plaintiff asks this Court to skip this factor altogether, arguing that "[a]n injunction in this matter will not have any impact beyond the parties to this case, as such, this factor should carry little weight in the Court's analysis." ECF No. 6 at 12. Plaintiff's argument is at-odds with its narrative that the City and CAI are working together to deprive Plaintiff of its property rights, and at-odds with Plaintiff's allegations that the replacement of the sewer line is necessary for the Kimpton to be built. ECF No. 1 ¶¶ 20-25; *see also* ECF No. 6 at 4-5. The outcome of this action directly impacts the City, CAI, and the public at-large, and this important factor cannot simply be disregarded by the Court. The public's interest in the proper disposal of waste, protecting the Truckee River, and encouraging an attractive environment for commercial activities are aligned with the City and CAI's interests. These public interests also strongly outweigh the private interests of Plaintiff.

At every step, Plaintiff relies on cursory allegations, fails to provide substantive evidence, and ignores applicable facts and law. Plaintiff fails to satisfy its burden to show a preliminary injunction is warranted. The Motion should be denied.

## V. IF A PRELIMINARY INJUNCTION ISSUES, PLAINTIFF SHOULD BE REQUIRED TO POST A BOND

Under Federal Rule of Civil Procedure 65(c), a preliminary injunction can issue "<u>only if</u> the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (emphasis added). This requirement is important because absent a bond "there can be no recovery for damages sustained by a wrongful issuance of a preliminary injunction." *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1167 (9th Cir. 1976).

Plaintiff should be required to post a bond to cover the expenses related to its sewage leaking on the CAI property, its continuing trespass, and the delays caused by these issues that could result in the termination of the Kimpton project. If the old sewer line is not replaced, it could catastrophically fail and cause sewage to severely damage the CAI Property (in addition to damage that has already occurred). Further, the longer the delay in the development of the Kimpton, the

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

more likely IHG Hotels & Resorts will terminate its agreement with CAI. This could result in millions of dollars of loses to CAI, the least of which is the loss to the value of the CAI Property. Despite the high stakes of this action, Plaintiff insists on continuing to trespass with its waste onto the CAI Property and interfering with CAI's development of the Kimpton.

Accordingly, Plaintiff should be required to post a bond of $500,000.00 to cover just a fraction of the damages incurred by CAI as a result of Plaintiff's sewage dumping and the delay caused by Plaintiff. While CAI is entitled to a much higher bond—and judgment—because Plaintiff's unreasonable actions could cause CAI to lose tens of millions of dollars, CAI recognizes that Plaintiff's Property is owned by a personal trust and, accordingly, has adjusted the bond amount.

The City separately seeks a bond of $93,500.00 to account for construction costs plus interest and CAI agrees this is more than reasonable.

## VI. CONCLUSION

For the foregoing reasons, CAI respectfully requests that this Court deny the Motion for Preliminary Injunction. If this Court grants the Motion for Preliminary Injunction, CAI requests the Court order Plaintiff to post a bond for, at minimum, $593,500.00.

DATED this 6th day of October, 2023.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Darren J. Lemieux*

Darren J. Lemieux, Bar No. 9615
Lucy C. Crow, Bar No. 13757
One East Liberty Street, Ste 300
Reno, Nevada 89501
Tel.: 303.623.9000
Fax: 303.623.9222
dlemieux@lewisroca.com
lcrow@lewisroca.com

*Attorneys for Applicant-Intervenor*

LEWIS ROCA
One East Liberty Street, Suite 300
Reno, Nevada 89501

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on the 6th day of October, 2023, I caused the foregoing **OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to:

Luke Busby, Esq.
316 California Ave.
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

Mark Hughs, Esq.
Reno City Attorney's Office
P.O. Box 1900
Reno, NV 89505
(775) 334-2050
hughsm@reno.gov

*Attorney for Defendant*

*/s/ Dawn Hayes*
Employee of Lewis Roca Rothgerber Christie LLP